OPINION *Page 2 
{¶ 1} Defendant-appellant, Matthew M. Campbell (hereinafter "Campbell"), appeals the judgment of the Crawford County Court of Common Pleas finding him guilty of breaking and entering. For reasons stated herein, we affirm.
 {¶ 2} Around 6:00 p.m. on February 5, 2007, Tom Sautter received a mysterious phone call after work hours wherein the caller asked for the "Sautter Brothers." "Sautter Brothers" is the name of the business owned by Tom John Sautter. (June 14, 2007 Tr. Vol. I at 94). Tom answered "hello" twice, but the caller hung up the phone. (Id. at 93-95, 104). The phone call led Tom to suspect that someone might be going to steal things at the company's storage barn because several items were stolen from the barn the prior day. (Id. at 119). Tom then sent his brother John to check on the barn. (Id. at 94).
 {¶ 3} As John was driving to the barn, he passed a suspicious truck pulling a trailer. (Id. at 121). John drove past the lane to the barn, and as he drove away, he saw the truck and trailer driving down the lane to the barn. (Id. at 122). John drove down to the next crossroad and turned around. (Id.). As John approached the lane to the barn, he could not see the truck and trailer, but he decided to block the driveway with his vehicle. (Id.). John was able to flag down a neighbor as he *Page 3 
drove by the lane and asked him to call law enforcement and to get Tom. (Id. at 122-23).
 {¶ 4} When the neighbor's vehicle returned with Tom, John saw the truck pull out of the barn. (Id. at 123). The truck approached John's vehicle, which was blocking the lane. The driver, later identified as Campbell, told John he was looking to rent a house. (Id. at 124.). John was able to identify the truck as a Ford pick-up with a driver and two passengers. (Id. at 125).
 {¶ 5} Soon after, the sheriff arrived on the scene. The sheriff investigated and discovered Campbell and his co-defendants did not steal anything from the barn that night. (June 14, 2007 Tr. Vol. II at 182). However, the sheriff did arrest Campbell and his co-defendants on criminal trespassing charges. (Id. at 181).
 {¶ 6} On February 12, 2007, the grand jury indicted Campbell for one count of breaking and entering, in violation of R.C. 2911.13(A), a fifth degree felony. A trial was held on June 14, 2007. At the conclusion of the trial, the jury found Campbell guilty. On July 23, 2007, a sentencing hearing was held, and the trial court sentenced Campbell to twelve (12) months in prison. Campbell appeals from this judgment and raises three assignments of error for review.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED BY NOT INSTRUCTING THE JURY ON THE CHARGE OF COMPLICITY SINCE THERE WAS NO EVIDENCE THAT [CAMPBELL] WAS THE *Page 4 PRINCIPAL OFFENDER ON THE CHARGE OF BREAKING AND ENTERING IN VIOLATION OF R.C. 2911.13(A).
 {¶ 7} In his first assignment of error, Campbell argues that the trial court erred by failing to instruct the jury on complicity because "there was no evidence to support who was the principal offender." The State argues that Campbell failed to object to the jury instructions on this basis; and therefore, any error must be reviewed under a plain error standard. The State further argues that under the plain error standard, this Court must overrule Campbell's assignment of error. We agree.
 {¶ 8} Crim.R. 30(A) provides the following: "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." A failure to object to jury instructions constitutes a waiver of that issue absent plain error. State v. Wolford, 3d Dist. No. 14-07-10, 2007-Ohio-6428, ¶ 16, citing State v. Bridge, 3d Dist. No. 1-06-30, 2007-Ohio-1764, ¶ 19, citing State v. Underwood (1983),3 Ohio St.3d 12, 13, 444 N.E.2d 1332.
 {¶ 9} To demonstrate plain error, the appellant must show that, but for the error, the trial outcome would have clearly been different. Id. at ¶ 17, citing Bridge, 2007-Ohio-1764, at ¶ 20. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a *Page 5 
manifest miscarriage of justice." Bridge, 2007-Ohio-1764, at ¶ 20, citing State v. Long (1978), 53 Ohio St.2d 91, 372 N.E2d 804, paragraph three of the syllabus.
 {¶ 10} In this case, Campbell objected to the wording of the jury instructions in three places; however, he failed to object on the basis of the trial court's failure to include complicity instructions. (June 14, 2007 Tr. Vol. II at 266-67). Therefore, we review Campbell's argument under plain error. Wolford, 2007-Ohio-6428, at ¶ 16, citingBridge, 2007-Ohio-1764, at ¶ 19, citing Underwood, 3 Ohio St.3d at 13.
 {¶ 11} We fail to see how the outcome of the trial would have clearly been different if the jury were instructed on complicity. Furthermore, the punishment given would have been exactly the same. R.C. 2923.03(F) provides, in pertinent part: "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecutedand punished as if he were a principal offender." Accordingly, even if Campbell was found guilty of complicity to breaking and entering, he would have faced the same potential punishment as he did following his conviction of breaking and entering. See e.g. State v. Lundgren (1995),73 Ohio St.3d 474, 489, 653 N.E.2d 304.
 {¶ 12} Finally, Campbell's assertion that the record is absent any evidence to demonstrate that he was the principal offender is factually inaccurate. John Sautter testified that he witnessed Campbell driving the truck and saw him switch *Page 6 
seats with a co-defendant prior to the sheriff's arrival. (June 14, 2007 Tr. Vol. I at 124-25). For all these reasons, we find that Campbell's argument lacks merit.
 {¶ 13} Campbell's first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION OF BREAKING AND ENTERING.
 {¶ 14} In his second assignment of error, Campbell alleges that there was insufficient evidence to support his conviction. Specifically, Campbell argues that the State failed to present evidence that he was ever in the storage barn; and therefore, the State failed to present evidence on the element of trespass. The State argues that the evidence presented demonstrated that Campbell pulled his truck and trailer into the storage barn. The State also points out that Campbell admitted he was at the barn to steal scrap metal. We agree with the State that the evidence was sufficient to sustain Campbell's conviction.
 When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Page 7 
State v. Ready (2001), 143 Ohio App.3d 748, 759, 758 N.E.2d 1203
(emphasis added); State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 15} Campbell was convicted of breaking and entering in violation of R.C. 2911.13(A). To prove a charge of breaking and entering the State must prove beyond a reasonable doubt that the defendant: (1) with purpose to commit a theft offense or any felony; (2) trespassed in an unoccupied structure; (3) by force, stealth, or deception. Viewing the evidence presented at trial in a light most favorable to the prosecution, a rational trier of fact could have found these elements were proven beyond a reasonable doubt.
 {¶ 16} First, the State provided sufficient evidence to show that Campbell was at the barn to commit a theft offense. During his police interview, Campbell admitted that he was at the barn to steal scrap metal. (June 14, 2007 Tr. Vol. I at 146-47). The interview DVD was played at trial and submitted into evidence. (June 14, 2007 Tr. Vol. I at 145, 165). Our independent review of the interview revealed that Campbell did, in fact, admit going to the barn on February 5, 2007 to steal scrap metal. Accordingly, we find the State presented sufficient evidence on this element.
 {¶ 17} Second, contrary to Campbell's allegations, the State provided sufficient evidence to show that he trespassed in the barn. Tom Sautter testified *Page 8 
that he saw the truck in the barn when he arrived. (Id. at 96, 115). John Sautter testified that he saw the truck pull out of the barn. (Id at 123). Tom, John, and Deputy Schoenfelt all testified that they saw truck tracks in the barn. (Id. at 114, 125-26, 150). Accordingly, we find the State also presented sufficient evidence on this element.
 {¶ 18} Third, contrary to the findings of the dissent, the State presented sufficient evidence on the element of stealth. "Stealth" has been defined as "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission." State v. Sims, 11th Dist. No. 2001-L-081, 2003-Ohio-324, ¶ 55, citing State v. Lane (1976), 50 Ohio App.2d 41, 47,361 N.E.2d 535. The jury in this case had several pieces of evidence upon which it could have concluded that Campbell acted with stealth.
 {¶ 19} To begin with, the jury had evidence which demonstrated that the barn's location was secluded, including photographs of the barn. (Defendant's Exs. A C). These photographs reveal that the barn was located in a remote soybean field a long distance from the road and was surrounded by fields and woods, with no other dwellings in sight. In addition, Tom testified that the barn was 800-1,000 feet from the road. (June 14, 2007 Tr. Vol. I at 93). Reviewing this evidence, a reasonable trier of fact could conclude that Campbell used the barn's *Page 9 
secluded location to avoid discovery and gain entry, and this could sustain an inference of stealth.
 {¶ 20} The jury heard evidence that the offense occurred in the night season. State v. Stuttler (1961), 172 Ohio St. 311, 312, 175 N.E.2d 728
(`"By the term `night season' is meant that period of time intervening between the termination of daylight in the evening to the earliest dawn of the following morning; that period of time from the setting of the sun in the evening to the rising of the su[n] in the morning, when the face of man is no longer discernible."`). During the police interview, Campbell admitted that he arrived at the barn around 6:30 p.m. on February 5th. Generally, it is dark outside around that time in February. Tom testified that he received the mysterious phone call on February 5th around 6:00-6:30 p.m., and, at that time, it was "starting to get dark." (June 14, 2007 Tr. Vol. I at 95, 104).
 {¶ 21} Deputy Schoenfelt confirmed that the Sherriff's office was notified about the February 5th incident at approximately 6:27 p.m. (Id. at 147). John testified that when the sheriff arrived on the scence it was "dusk." (Id. at 121). Furthermore, Tom testified that he saw lights coming from the barn, indicating it was dark outside. (Id. at 115). From this evidence, the jury could conclude that Campbell used the concealment of darkness to enter the barn undetected, and this could sustain an inference of stealth. *Page 10 
 {¶ 22} The jury heard evidence indicating that Campbell pulled his truck into the barn. Tom testified that he saw the truck in the barn when he arrived, and John testified that he saw the truck pull out of the barn. (Id. at 96, 115, 123). Tom, John, and Deputy Schoenfelt all testified that they saw truck tracks in the barn. (Id. at 114, 125-26, 150). From this evidence, a reasonable trier of fact could infer that Campbell used the barn to conceal his activity, and this could sustain an inference of stealth. Furthermore, from the evidence that Campbell pulled the truck out of the barn as John approached the lane, the jury could infer that Campbell was attempting to "look innocent," and this too could sustain an inference of stealth.
 {¶ 23} Finally, the jury heard evidence that Tom received a mysterious anonymous phone call on the night of the February 5th incident asking for the "Sautter Brothers." (Id. at 93-94). Tom said "hello" twice, but the caller hung up. (Id. at 94). As a result of this phone call and the previous thefts, Tom became suspicious and sent his brother John to check on the barn. (Id.). Although the phone call was not tied to the defendant, a reasonable juror could infer it was Campbell calling to confirm that the Sautter brothers were away from the barn. This evidence, though circumstantial, could also sustain an inference of stealth.
 {¶ 24} Therefore, the State presented sufficient evidence on all three elements necessary to sustain Campbell's breaking and entering conviction.
 {¶ 25} Campbell's second assignment of error is, therefore, overruled. *Page 11 
 ASSIGNMENT OF ERROR NO. Ill THE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 26} In his third assignment of error, Campbell argues that the verdict was against the manifest weight of the evidence. Again, Campbell argues that the evidence presented did not show that he trespassed into the barn. The State disagrees and so do we.
 {¶ 27} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "`[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses.State v. DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212.
 {¶ 28} Campbell again argues that the evidence presented did not establish that he trespassed into the barn. As we have already indicated, this argument is factually inaccurate. The record contains several pieces of evidence upon which a *Page 12 
jury could find that he trespassed. In addition, Campbell admitted that he was at the barn to steal scrap metal during his police interview, which was admitted into evidence. (June 14, 2007 Tr. Vol. I at 145-47, 165). After our independent review of the evidence presented in this case, the only conclusion we can reach is that Campbell's conviction was not against the manifest weight of the evidence.
 {¶ 29} Campbell's third assignment of error is, therefore, overruled.
 {¶ 30} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 ROGERS, J., concurs.